IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHOPMEN'S LOCAL UNION No. 527 PENSION and BENEFIT FUNDS, SHOPMEN'S LOCAL UNION No. 527, and DAVID E. HARRISON, <br><br> Plaintiffs, <br><br> -vs- <br><br> T. BRUCE SALES, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) Civil Action No. 06-545 ) ) ) ) |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

In this civil action, Plaintiffs are a pension fund, union, and an individual employee of Defendant, who is also a member of Plaintiff union and a participant in Plaintiff fund. Plaintiffs claim that a provision in the pension fund documents was included by mistake, and violates the anti-cutback rule of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1054(g)(1), and therefore that Plaintiff Employee is entitled to recover lost wages or benefits suffered as a result of the violation.[1]

---

[1] It is unclear how the "labor issue" that Plaintiff identifies differs in any substantive respect from the substantive aspects of the "ERISA issue." Indeed, Plaintiffs state that resolution of the ERISA issue will resolve the labor issue. Therefore, I do not separately address the two.

1

Before the Court are the parties' Cross-Motions for Summary Judgment. For the following reasons, Defendant's Motion will be granted, and Plaintiff's denied.

## I. **FACTS**

Only the import of the facts, and not the material facts themselves, are in dispute.[2] Unless otherwise indicated, therefore, the following facts are undisputed.

The Trustees of Shopmen's Local Union No. 527 Pension and Benefit Funds ("Trustees") administer a pension fund (the "Plan"), which is an employee benefit plan within the meaning of ERISA, and which involves certain employers who have collective bargaining relationships with the Plaintiff Union. The Plaintiff Union represents certain employees of Defendant; Defendant is a contributing employer to the Plan. The Plaintiff Union and Defendant are parties to a collective bargaining agreement ("CBA"). Plaintiff Employee is an employee of Defendant, a member of Plaintiff Union, and a Plan participant.

Since 1957, the Plan has provided retirement and disability benefits to employees of employers who had collective bargaining relationships with the Plaintiff Union. Plaintiff Union and participating employers entered into an Amended Agreement and Declaration of Trust ("Agreement"), which provides that the Plan shall be administered by the Trustees. It further states that the Trustees will establish rules and regulations to administer the Plan pursuant to the terms of the Agreement. Those rules and regulations are set forth in a Pension Plan

---

[2]Pursuant to Local Rule 56.1(E), I will deem Defendant's Statement of Undisputed and Material Facts admitted, as not controverted or specifically denied. It appears that Plaintiffs' failure to respond thereto was intentional.

2

Document ("Plan Document"), which is distributed to participating employers and employees. Under the terms of the Agreement, the Plan's purpose is to receive contributions and to provide benefits for eligible employees. The parties' CBA incorporates by reference the Agreement, the Plan, and the Plan Document. The Pension Plan Rules and Regulations, however, are not necessarily controlled by the terms of the CBA. No incorporating language regarding the CBA is included in the Pension Fund Rules and Regulations. All benefit improvements under the Plan document are communicated to members and a copy of all benefit improvements are sent to all employer participants in the Plan.

Under the original terms of the Plan Document, an employee was required to reach normal retirement age, defined as 65 years old, and also separate from service with a contributing employer, in order to be considered retired and be eligible for benefits.

In 1983, the Plan was amended to allow employees to retire, work less than full time, and receive benefits. Section 7.06 of the Plan Document, as so amended, provided as follows:

> (a) <u>General Rule</u>. To be considered retired, a Participant must have separated from service with any and all Contributing Employers.
>
> (b) <u>Exceptions</u>. A Participant who has separated from his previous employment, as defined in paragraph (a), shall be considered retired notwithstanding subsequent employment or reemployment with a Contributing Employer for less than 40 hours in any month.

On November 16, 1998, the Trustees passed the following unanimous motion,

as reflected in the meeting minutes:

> MOTION, to allow people to work on and after age 62 and receive their pension payments. However, there will be no bridge payment for those people who are working and receiving pension benefits.

The Trustees subsequently amended the Plan Document, on August 24, 1999, to include the motion as part of the Plan Rules and Regulations.

On that same date, Section 7.06 of the Plan Document was amended as follows:

> (a) <u>General Rule</u>. A Participant who has not attained Normal Retirement Age must have separated from service with any and all Contributing Employers to be considered retired.
>
> (b) <u>Exceptions</u>. A Participant who has separated from his previous employment, as defined in subsection 7.06(a) by virtue of commencing an Unreduced Early Retirement Pension Benefit, shall be considered retired notwithstanding subsequent employment or re-employment with the same Contributing Employer. Provided however, that the Participant returns to Covered Employment with the same Contributing Employer that he worked for immediately prior to his retirement.

<u>Id.</u> at Section 7.06(b).

Section 3.04 of the Plan Document was also amended at that time. That amendment read as follows:

> A Participant with at least one (1) Hour of Service on or after December 1, 1997 shall be entitled to retire on or after January 1, 1998 on an Unreduced Early retirement Pension if he meets all of the following requirements:
>
> (a) He has attained age 62;

4

>   (b) He has at least five (5) years of service.

Id. at Section 3.04.

These amendments were approved by the Trustees and incorporated into the Plan. As restated in its entirety effective January 1, 2002, the Plan Document contains the August 24, 1999 amendments.[3]

Plaintiff Employee retired and began to receive an Unreduced Early Retirement Pension without separating his service with Defendant. Defendant discovered that he was receiving early retirement benefits without separating from service. Defendant then required him to resign, and rehired him. As a result, Plaintiff Employee claims he lost earned vacation time, seniority to retain his job during layoffs, and a higher pay rate. Plaintiffs do not claim that these benefits were due him under the Plan or related documents. Defendant avers that they arose, instead, under the CBA. Plaintiffs do not claim loss of any Unreduced Early Retirement benefit as a result of the separation. Plaintiff avers that the Trustees have recognized a scrivener's error, and set its agenda to clarify the language of the Summary Plan Description to reflect that there is no separation from service requirement.

## II. **APPLICABLE STANDARDS**

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

[3] The parties cite to several other provisions of the Plan Document, which I decline to reproduce here as they either do not impact my analysis, or figure significantly in the parties' arguments.

5

that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. <u>International Raw Materials, Ltd. V. Stauffer Chem . Co.</u>, 898 F. 2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. <u>United States v. Onmicare, Inc.</u>, 382 F. 3d 432 (3d Cir. 2004).

### III. **DISCUSSION**

Plaintiffs argue, initially, that the amendments and motion were properly passed, but were improperly drafted into the written Plan due to scrivener's error. Plaintiffs' argument is, essentially, that the Plan should be reformed to comport with purported evidence of the intent of the trustees, who did not intend to require a separation from service. Plaintiffs also argue that the separation from service requirement violates ERISA's so-called "anti-cutback" provision, because it resulted in the loss of accrued benefits such as vacation and seniority. I will address each of Plaintiff's arguments in turn.

### A. **Scrivener's Error**

By asserting that the separation from service requirement should be read out of the Plan in order to comport with the Trustees' intent, Plaintiffs essentially argue that the document should be reformed to reflect a scrivener's error. Generally speaking, a court is required to enforce an ERISA plan as written, unless a term of ERISA directs to the contrary. <u>Bellas v. CBS, Inc.</u>, 221 F.3d 517, 522 (3d Cir. 2000.

Under the doctrine of scrivener's error, however, a drafting mistake may be reformed based on parol evidence, provided that the evidence of a mistake is "clear, precise, convincing and of the most satisfactory character." <u>International Union of Elect., Salaried, Machine, and Furn. Workers v. Murata Erie North Am., Inc.</u>, 980 F.2d 889, 907 (3d Cir. 1992). The scrivener's error doctrine, it has been noted, is potentially at odds with the goal of ERISA to insure that "every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." <u>Id.</u> In this Circuit, therefore, the doctrine has been applied under particular circumstances in which ERISA's goals were "less pertinent," such as where the mistake related to unexpected excess plan funds. <u>Id.</u> at 907-08.

In the matter at hand, the scrivener's doctrine is inapplicable. First, there is no clear, precise, and convincing evidence of mistake. Plaintiffs have proffered only the unsupported assertion that other Plan participants received an early retirement benefit without first separating from service; likewise, they proffer only a bare assertion, not admitted by Defendants, that the Trustees now consider the separation requirement to be an error.[4] Even if I were to consider evidence that other employees were not required to separate from service prior to receiving pension benefits, I note "no case holding an employee who is unambiguously

---

[4]An assertion without record citation is insufficient for consideration under applicable standards. In any event, apart from the alleged scrivener's error, if an ERISA plan is unambiguous, extrinsic evidence may not be used to modify its meaning. <u>Lettrich v. J.C. Penney Co.</u>, 90 Fed. Appx. 604, 611-12 (3d Cir. 2004). I find no ambiguity, and the parties do not allege any ambiguity, and therefore I need not consider the extrinsic evidence cited by either party. My conclusions also render unnecessary consideration of the parties' remaining arguments regarding the intent of the Trustees.

7

ineligible for benefits under the terms of an ERISA plan can nonetheless receive that benefit because the administrator granted it to other ineligible participants." <u>Vitale v. Latrobe Area Hospital</u>, 420 F.3d 278, 284 (3d Cir. 2005).

Moreover, the Plan and related documents reveal no internal incompatibility that conclusively belies a drafting error. The 1999 motion may be read consistently with the other Plan language: an employee may continue to work on or after age 62 and receive pension payments, too; provided, that is, that she previously separated from service. Similarly, the term "retire" in Section 3.04 of the Plan Document, which does not refer to the separation requirement, can be read in conjunction with the explication of the word "retired" in Section 7.06, which requires separation from service. Finally, reformation in the present case would be inconsistent with the goals of ERISA. Here, employees are likely to rely on the Plan Document to determine their rights and obligations with respect to retirement benefits. In sum, equity does not require reformation under the circumstances, and it would be inappropriate to apply the scrivener's error doctrine.

## B. **The Anti-Cutback Rule**

I move, then, to Plaintiffs' assertion that the separation from service requirement violates ERISA's anti-cutback provision. Defendant argues, in opposition and initially in its own Motion, that the provision is inapplicable here.

The anti-cutback provision of ERISA provides, with exceptions not at issue here, that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." 29 U.S.C. § 1054(g)(1). A crucial principle in this

context is that a new condition may not be imposed after a benefit has been accrued; conditions set before the benefit has accrued, for example, survive the anti-cutback rule. Central Laborer's Pension Fund v. Heinz, 541 U.S. 739, 745-46, 124 S.Ct. 2230, 159 L. Ed. 2d 46 (2004). The anti-cutback provision implements the central goal of ERISA, which is to protect "employees' justified expectations of receiving the benefits their employers promise them." Id. at 743.

First, by its terms, the statutory provision prohibits amendments, and not other employer or trustee activity, that decreases an accrued benefit. In this case, it is not the amendment itself that is alleged to have decreased Plaintiff Employee's benefit.[5] Instead, accepting the facts in the light most favorable to Plaintiffs, the terms of his rehiring are alleged to have decreased the benefits. The amendment itself, while mandating a separation from service, does not mandate the terms of any subsequent return to employment, or any shrinking of benefits. Moreover, the challenged amendments did not impose any new condition on the receipt of benefits already accrued. Prior to the 1999 amendments, the Plan Document required a separation of service, and the amendments left that relatively longtime requirement in place. Accordingly, the anti-cutback provision does not apply, because these facts do not present the required decrease "by an amendment of the plan."

Second, even assuming the loss of benefits is properly traceable to the

---

[5]This fact, inter alia, differentiates this matter from the one at issue in Heinz. In that case, a plan amendment had the effect of shrinking the value of pension rights. Heinz, 541 U.S. at 744-45.

9

amendments, Plaintiffs have not demonstrated that the benefits were "accrued benefits" within the meaning of the statute.  The terms of the anti-cutback rule apply, for example, to a benefit accrued "under a plan" or "determined under the plan."  29 U.S.C. §§1054, 1002(23)(a).   In addition, an early retirement benefit attributable to service before a plan amendment may be treated as an "accrued benefit." See 29 U.S.C. §1054(g).  An "early retirement benefit," in turn, may be seen as a benefit "that becomes available upon retirement at or after a specified age which is below the normal retirement age, and/or upon completion of a specified period of service." Ross v. Pension Plan for Hourly Employees of SKF Indus., Inc., 847 F.2d 329, 333 (6th Cir. 1988).[6]

Plaintiffs do not aver that the allegedly curtailed benefits were due Plaintiff Employee from the Plan, or pursuant to Plan Documents.  In addition, there is absolutely no evidence that the lost vacation and seniority were benefits that became available upon retirement or upon completion of a specified period of service, or otherwise qualified as an early retirement benefit.  Moreover, Plaintiffs point to no pertinent legal authority, nor do I find any, finding seniority, a "right to continue working," or vacation time protected against cutback for any reason.  Moreover, Plaintiffs have not averred loss of any other early retirement benefit; they do not contest that Plaintiff Employee continued to receive his early retirement benefits after being rehired.  In sum, while the implementation of Plan

---

[6]A retirement-type subsidy, or optional benefit, also pertinent to the anti-cutback issue, do not seem to be at issue here.  See Bellas, 221 F.3d at 525; Ross, 847 F.2d at 333-34.

terms might have reduced an accrued benefit within common parlance, I cannot find that it affected an "accrued benefit" within the specialized meaning of ERISA. For that additional reason, Plaintiff has not demonstrated that Section 1054(g)(1) is applicable here.

### CONCLUSION

In sum, although Plaintiffs' position is not without appeal, applicable ERISA and procedural standards require that the separation from service requirement stand as written. Plaintiffs have not met the standard required for the scrivener's error doctrine, and the anti-cutback rule is inapplicable here. In contrast, there is no genuine issue of material fact regarding Defendant's entitlement to judgment as a matter of law. For these reasons, I will grant Defendant's Motion and deny that of Plaintiffs. An appropriate Order follows.

### ORDER

THEREFORE, this **6th** day of February, 2007, it is ORDERED that Defendant's Motion for Summary Judgment (Docket No. 17) is GRANTED, and Plaintiffs' Motion for Summary Judgment (Docket No. 14) is DENIED. Judgment is entered in favor of Defendant and against Plaintiff. This case is closed forthwith.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U.S. District Judge